UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

COMMONWEALTH OF MASSACHUSETTS,

Plaintiff,

v.

BOSTON SAND & GRAVEL COMPANY,

Defendant.

Case No. 19cv12004 - WGY

**CONSENT DECREE**

WHEREAS, Boston Sand & Gravel Company ("Boston Sand & Gravel") owns and operates a ready-mix concrete manufacturing facility adjacent to the Millers River at 500 Front Street, Charlestown, Massachusetts (the "Facility");

WHEREAS, the Commonwealth of Massachusetts ("Commonwealth"), acting through the Office of the Attorney General ("Attorney General's Office"), alleges in its Complaint that Boston Sand & Gravel emits visible plumes of particulate matter from the Facility into the atmosphere in violation of the Federal Clean Air Act, 42 U.S.C. § 7401, *et seq.* and the Massachusetts Clean Air Act, G.L. c. 111, § 142A; discharges polluted industrial stormwater into the Millers River in violation of the Federal Clean Water Act, 33 U.S.C. § 1311(a); and has released sand, concrete, aggregate, cement, and their components ("Industrial Material") to the banks of the Millers River in violation of the Massachusetts Wetlands Protection Act, G.L. c. 131, § 40;

WHEREAS, on January 9, 2019, the Attorney General's Office provided notice of the alleged violations and of the Attorney General's Office's intention to file suit against Boston

Sand & Gravel to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region I; the Massachusetts Department of Environmental Protection ("MassDEP"); the Governor of Massachusetts; and to Boston Sand & Gravel, pursuant to Section 505(b)(1)(A) of the Federal Clean Air Act and Section 304(b)(1)(A) of the Federal Clean Water Act (the "Notice Letter"). *See* 42 U.S.C. § 7604(b)(1)(A); 33 U.S.C. § 1365(b)(1)(A);

WHEREAS, Boston Sand & Gravel denies all of the violations alleged by the Attorney General's Office and the Commonwealth in the Notice Letter, Complaint, and this Consent Decree;

WHEREAS, the Attorney General's Office has today filed its Complaint on behalf of the Commonwealth against Boston Sand & Gravel in the United States District Court, District of Massachusetts (the "Court");

WHEREAS, Boston Sand & Gravel has today filed an Answer to the Complaint with the Court which answer denied the allegations in and asserted affirmative defenses to the Complaint by the Attorney General's Office and the Commonwealth;

WHEREAS, following receipt of the Notice Letter, Boston Sand & Gravel – while denying all of the violations alleged in the Notice Letter – took certain steps to further reduce the likelihood of (a) stormwater discharges to the Millers River and (b) any malfunctions of air pollution control equipment that could result in excess particulate matter emissions from the Facility into the atmosphere, including, among other things: (i) retaining GeoInsight, Inc., a third party environmental consulting firm, to assist Boston Sand & Gravel in identifying potential capital improvements and best management practices; (ii) implementing a training program for drivers of cement bulker trucks operated by a third-party transportation company; (iii) inspecting

2

and replacing the bindicator on Bin A of Plant 3; (iv) installing a metal plate over the gap in the barrier attributable to the Massachusetts Department of Transportation's need to access its manhole located adjacent to the Millers River; and (v) consulting with Concrete Plants, Inc., a provider of turn-key batch plant equipment, service, and parts, in designing the capital improvements described in this Consent Decree;

WHEREAS, Boston Sand & Gravel alleges that the state and federal highway systems surrounding the Facility discharge large volumes of untreated stormwater runoff from treated (i.e., with sand and salt) road surfaces directly into the Millers River and its banks;

WHEREAS, Boston Sand & Gravel does not admit, nor has there been an adjudication of, any facts, interpretations of law, or liability to the Commonwealth arising out of the transactions, conditions, operations, or occurrences alleged in the Notice Letter, Complaint, and this Consent Decree;

WHEREAS, the Attorney General's Office and Boston Sand & Gravel have reached an agreement to resolve the allegations made by the Attorney General's Office; and

WHEREAS, this Consent Decree shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 42 U.S.C. § 7604(c)(2) and 33 U.S.C. § 1365(c).

NOW THEREFORE, based on the Joint Motion of the Parties for Entry of this Consent Decree and before taking any testimony and without the adjudication of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), it is **ADJUDGED, ORDERED, AND DECREED** as follows:

3

## I. JURISDICTION AND VENUE

1.       This Court has subject matter jurisdiction over the parties and the subject matter of this action pursuant to Section 304(a) of the Federal Clean Air Act, 42 U.S.C. § 7604(a), Section 505(a)(1)(A) of the Federal Clean Water Act, 33 U.S.C. § 1365(a)(1)(A), 28 U.S.C. § 1331 (an action arising under the laws of the United States), and 28 U.S.C. § 1367 (supplemental jurisdiction over related state claims).

2.       Venue is proper in the District of Massachusetts pursuant to Section 304(c)(1) of the Federal Clean Air Act, 42 U.S.C. § 7604(c)(1) and Section 505(c)(1) of the Federal Clean Water Act, 33 U.S.C. § 1365(c)(1). For purposes of this Consent Decree, or any action to enforce this Consent Decree, Boston Sand & Gravel consents to the Court's jurisdiction over Boston Sand & Gravel and over this Consent Decree and any such action to enforce it and consents to venue in this judicial district.

## II. PARTIES BOUND

3.       This Consent Decree shall constitute a binding agreement between Boston Sand & Gravel and the Commonwealth of Massachusetts (the "Parties" and each a "Party"), and the Parties consent to its entry as a final judgment by the Court and waive all rights of appeal as to the jurisdiction, venue, or terms of the Consent Decree upon its entry on the docket.

4.       Boston Sand & Gravel shall provide a copy of this Consent Decree to each of its managers, officers, contractors, successors, and assigns whose duties might include compliance with any of the Injunctive Relief Provisions in Section V of this Consent Decree and shall ensure that each of its employees are familiar with the requirements of this Consent Decree that may apply to his or her duties.

5.      No change or transfer in ownership, management, or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve any person of any obligation under this Consent Decree. Boston Sand & Gravel shall, at least thirty (30) days prior to any change or transfer of ownership of the Facility, provide a copy of this Consent Decree to the proposed transferee.  Boston Sand & Gravel shall provide written notice of any such change or transfer in ownership of the Facility to the Attorney General's Office in accordance with Section XI (Notices) of this Consent Decree within seven (7) business days after such change or transfer in ownership.  The obligations imposed on Boston Sand & Gravel in this Paragraph shall survive until twenty (20) months after the Effective Date, provided that Boston Sand & Gravel has fulfilled its obligations under this Section IV and Paragraph 14 of this Consent Decree.

6.      Boston Sand & Gravel shall not violate this Consent Decree, and Boston Sand & Gravel shall ensure that its officers, agents, employees, attorneys, contractors, and assigns do not violate this Consent Decree.  In any action to enforce this Consent Decree, Boston Sand & Gravel shall not raise as a defense the failure by any of its managers, directors, officers, supervisors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III. EFFECTIVE DATE

7.      The effective date of this Consent Decree ("Effective Date") shall be when the Court enters the Consent Decree on the docket.

### IV. PAYMENTS

8.      Within fifteen (15) days of the Effective Date, Boston Sand & Gravel shall pay to the Commonwealth a civil penalty in the sum of sixty-two thousand, five hundred dollars ($62,500). The payment of the civil penalty shall be made by certified, treasurer's, or bank check

5

payable to the "Commonwealth of Massachusetts" and delivered to the Office of the Attorney General, Environmental Protection Division, One Ashburton Place, Boston, Massachusetts, 02108, to the attention of Nora J. Chorover, Special Assistant Attorney General. The check shall include on its face the following information: "Commonwealth v. Boston Sand & Gravel – Civil Penalty."

9.      Within fifteen (15) days of the Effective Date, Boston Sand & Gravel shall make a payment of sixty-two thousand, five hundred dollars ($62,500) to the Charles River Conservancy (the "CRC Payment"). Boston Sand & Gravel's CRC Payment is conditioned on the Charles River Conservancy's stated purpose to use the CRC Payment to fund projects that will benefit water quality in the Charles River in the vicinity of the Facility and to support stewardship, renewal, and enhancement of the parklands along the urban Charles River. The CRC Payment shall be made by certified check, treasurer's check or bank check payable to "Charles River Conservancy" and sent to Laura Jasinski, Executive Director, Charles River Conservancy, 43 Thorndike Street, S3-3, Cambridge, MA 02141. Evidence of Boston Sand & Gravel's payment to CRC shall be sent by Boston Sand & Gravel to the Attorney General's Office on the same day that the payment is transmitted to CRC.

10.      Pursuant to 42 U.S.C. § 7604(d) and 33 U.S.C. § 1365(d), Boston Sand & Gravel shall reimburse the Attorney General's Office in the amount of sixty thousand dollars ($60,000) to defray the Attorney General's Office's costs, including attorney fees, incurred in connection with its work on this matter. The reimbursement of costs, including attorney fees, shall be made within fifteen (15) days of the Effective Date, and shall be made by certified, treasurer's, or bank check payable to the "Commonwealth of Massachusetts" and delivered to the Office of the Attorney General, Environmental Protection Division, One Ashburton Place, Boston, Massachusetts, 02108, to the attention of Nora J. Chorover, Special Assistant Attorney General. The check shall include

on its face the following information: "Commonwealth v. Boston Sand & Gravel Company – Costs Including Attorney Fees." Nothing in this Paragraph or in this Consent Decree shall restrict the Attorney General's Office's right to seek additional compensation for reasonable fees or reasonable costs that it incurs to address Boston Sand & Gravel's noncompliance with the terms of this Consent Decree.

## V. INJUNCTIVE RELIEF

11.    Boston Sand & Gravel agrees to operate the Facility in compliance with the applicable requirements of its Non-Major Comprehensive Plan Approval ("Plan Approval"), issued by MassDEP on July 22, 2003, and/or with any subsequent amended or reissued Comprehensive Plan Approval or air quality permit issued by MassDEP and with the Federal Clean Air Act, the Massachusetts Clean Air Act, and their respective implementing regulations, to the extent those provisions apply to the Boston Sand & Gravel Facility.

12.    Elimination of Fugitive Stormwater Discharges. Boston Sand & Gravel agrees to take all appropriate steps necessary to prevent unpermitted discharges of industrial stormwater from the Facility to the Millers River from locations at the Facility other than Outfall 001 and to comply with the Massachusetts Wetlands Protection Act and its implementing regulations.

13.    Movement and Storage of Industrial Material. As of the Effective Date, Boston Sand & Gravel will not mobilize or store Industrial Material in a manner that results in Industrial Material spilling over onto the banks of the Millers River or onto the area between the top of the stormwater control berm and the Millers River ("Riverbank Area") or in a manner that results in

sedimentation or destabilization of the Riverbank Area, except to the extent that such mobilization is consistent with any applicable governmental approvals.

14.    Improved Emission Control Measures. On or before December 16, 2019, Boston Sand & Gravel will have installed or caused the installation of and be properly operating the following additional air emission control measures:

a.    Pressure Differential Devices. Pressure differential devices with adjustable low/high pressure switches will be installed on each of the existing baghouses at the Facility to monitor the change in pressure (pressure differential or pressure drop) across the filter media for each baghouse. Each pressure differential device will be adjusted so that (i) the low pressure switch will send a signal to the alarm system when the pressure differential across one or more baghouse filters reaches the minimum pressure drop set point (i.e., when one or more filters need attention) and (ii) the high pressure switch will send a signal to the alarm system when one or more baghouse filters reaches the maximum pressure drop set point (i.e., when one or more filters are clogged) and will inflate the bladder of the pinch valve in the feed pipe to the particular bin or silo stopping the filling process.

b.    Over-Pressurization System. An over-pressurization system will be installed for each bin and silo at the Facility. Each bin or silo will be equipped with a pressure switch working in conjunction with pinch valves located in each fill pipe and the alarm system described in Paragraph 14(d). When a pressure switch detects pressure at or above its set point it will send a signal to the

8

alarm system and will inflate the bladder of the pinch valve in the feed pipe to

the particular bin or silo thereby stopping the filling process.

c.   Overfill System. An overfill system will be installed for each bin and silo at

the Facility. Each overfill system will be equipped with two rotary level

indicators (high and high-high) working in conjunction with pinch valves

located in each fill pipe and the alarm system described in Paragraph 14(d).

The high and high-high rotary level indicators detect material in the bin or silo

at a predetermined level. The high level indicator will send a signal to the

alarm system and, after a designated period of time, will inflate the bladder of

the pinch valve in the feed pipe to the particular bin or silo thereby stopping

the filling process. The high-high level indicator will send a signal to the

alarm system and will inflate the bladder of the pinch valve in the feed pipe to

the particular bin or silo thereby stopping the filling process.

d.   Alarm System. A wall mounted alarm system with alarm lights and sounds

and remote reset capability will be installed in the dispatch office of the

Facility and will be connected to each of the systems described in

subparagraphs (a) through (c) of this Paragraph 14.

15.   Improved Emission Reporting Measures. As of the Effective Date, Boston Sand &

Gravel will have implemented appropriate measures to ensure that it timely and adequately reports

to MassDEP any upset or malfunction to the air pollution control equipment at the Facility which

9

results in excess emissions to the air and/or a condition of air pollution in accordance with Special Condition 5 of the Plan Approval.

## VI. FACILITY ACCESS AND SUBMISSION OF RECORDS

16. For the first 20 months following the Effective Date, Boston Sand & Gravel shall permit the Attorney General's Office to visit of the Facility during normal daylight business hours, provided that the Attorney General's Office provide at least seventy-two (72) hours of prior notice. Representatives of the Attorney General's Office must wear hard hats, strong toed boots, reflective vests, and eye protectors and be accompanied by representatives of Boston Sand & Gravel at all times during site visits at the Facility and must defer to the reasonable judgment of Boston Sand & Gravel with respect to all safety considerations. During any site visit, the Attorney General's Office shall have access to and permission to copy any documentation required to be kept on site by the Plan Approval and may take photos at the Facility.

17. For the first twenty (20) months after the Effective Date, Boston Sand & Gravel shall provide the Attorney General's Office with the following documents, by emailing them to nora.chorover@mass.gov:

    a. Copies of all documents that Boston Sand & Gravel submits to the Commonwealth (including MassDEP), and/or the City of Boston after the Effective Date concerning Boston Sand & Gravel's compliance with the Plan Approval, the Massachusetts Wetlands Protection Act, or concerning unpermitted industrial stormwater discharges to the Millers River from locations at the Facility other than Outfall 001, including but not limited to all documents and reports submitted as required by the Plan Approval. Such

10

documents and reports shall be sent to the Attorney General's Office on the same day that they are submitted to the governmental entity;

b. If requested by the Attorney General's Office in writing, all documents contained in Boston Sand & Gravel's Air Quality Environmental Log Book, including Weekly Air Pollution Control Equipment Inspection Forms and Monthly Dust Collector Leak Detection Testing and Maintenance Log Forms generated after the Effective Date. Such maintenance records will be provided within seven (7) business days of Boston Sand & Gravel's receipt of a written request by the Attorney General's Office;

c. Timely written notice of any planned or completed construction, substantial reconstruction, or alteration of any emission unit – excluding any capital improvements contemplated in this Consent Decree – that would trigger the obligation to obtain a new or modified plan approval pursuant to 310 CMR 7.02(1)(b); and

d. Laboratory reports and analytical results of air emissions sampling performed by or for Boston Sand & Gravel, if any, within five (5) business days of receiving the reports, provided, however, that nothing in this Consent Decree imposes any new obligation on Boston Sand & Gravel to obtain or analyze such samples.

18. Any information provided or acquired by Boston Sand & Gravel or the Attorney General's Office pursuant to this Consent Decree may be used after the Effective Date by the Commonwealth to enforce the provisions of this Consent Decree or by Boston Sand & Gravel to

11

defend against such enforcement, except to the extent the information is inadmissible pursuant to Federal Rule of Evidence Rule 408.

19.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the Commonwealth or any of its branches, departments, agencies, or offices pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Boston Sand & Gravel to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits, provided, however, that nothing in this Paragraph imposes any new duty or obligation on Boston Sand & Gravel.

## VII. INTEREST AND COLLECTIONS

20.     If any payment required pursuant to this Consent Decree is late or not made, Boston Sand & Gravel shall pay interest on any overdue amount for the period of such nonpayment at the rate of twelve percent (12%) pursuant to G.L. c. 231, § 6B, computed monthly, and shall pay all reasonable expenses associated with collection by the Commonwealth of the unpaid amounts and interest for any period of nonpayment after the payment obligation becomes due, including reasonable attorney fees.

## VIII. EFFECT OF CONSENT DECREE

21.     Upon compliance with paragraphs 8-10 and 14 of this Consent Decree and entry of this Consent Decree by the Court, (a) this Consent Decree shall resolve the liability of Boston Sand & Gravel and its managers, directors, officers, shareholders, subsidiaries, affiliates, agents, attorneys, employees, representatives, successors, and assigns (the "Boston Sand & Gravel Parties") for the specific legal claims alleged against it in the Complaint that arose prior to the Effective Date, and (b) the Commonwealth shall release the Boston Sand & Gravel Parties and

12

covenants not to sue or assert any civil, judicial, or administrative claims against the Boston Sand & Gravel Parties for liability for the specific legal claims alleged against Boston Sand & Gravel in the Complaint that arose prior to the Effective Date. Notwithstanding the foregoing, the Commonwealth expressly reserves all claims for injunctive relief for violations of all the statutes and regulations referred to in this Consent Decree that occur after this Consent Decree is executed by the Parties, whether the violations are related to the specific legal claims resolved by this Consent Decree or otherwise.

22.     Except as otherwise provided in Paragraph 21, nothing in this Consent Decree (a) shall bar any action by the Commonwealth on any legal claim not specifically pleaded in the Complaint or for any violations not revealed to the Commonwealth; (b) shall be deemed to excuse non-compliance by Boston Sand & Gravel with any law or regulation; or (c) shall preclude a separate or ancillary action by the Commonwealth to enforce the terms of this Consent Decree or any permit or other approval issued to Boston Sand & Gravel by MassDEP or EPA relative to the Facility.

23.     This Consent Decree is not a permit or a modification of any permit under any federal, state, or local laws or regulations. Except as otherwise provided in Paragraph 21, Boston Sand & Gravel's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits. The Attorney General's Office does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Boston Sand & Gravel's compliance with any aspect of this Consent Decree will result in compliance with provisions any applicable federal, state, or local law, regulation, or permit.

24.     Violations of this Consent Decree may be punishable by contempt following an appropriate civil contempt proceeding.

13

## IX. DISPUTE RESOLUTION

25.     If the Attorney General's Office has determined that Boston Sand & Gravel is in violation of this Consent Decree, the Attorney General's Office may request, in writing, that Boston Sand & Gravel meet and confer within seven (7) business days of receiving written notification of such request from the Attorney General's Office, for the purpose of determining whether a violation has occurred and developing a mutually agreed upon plan, including implementation dates, to resolve the dispute. If the parties fail to meet and confer, or the meet and confer does not resolve the dispute and result in a mutually agreed upon plan, the Commonwealth shall be entitled to pursue applicable remedies, including filing a motion for available judicial relief from the Court. Nothing in this paragraph prevents the Commonwealth from seeking judicial relief without first requesting that Boston Sand & Gravel meet and confer.

## X. MISCELLANEOUS

26.     Boston Sand & Gravel understands and agrees that, pursuant to 11 U.S.C. § 523(a)(7), the civil penalty and any other costs or sums that Boston Sand & Gravel is required to pay under this Consent Decree are not subject to discharge in any bankruptcy.

27.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Consent Decree.

28.     Boston Sand & Gravel shall pay reasonable attorney fees and reasonable costs incurred by the Commonwealth in the enforcement of this Consent Decree to the extent such fees and costs are incurred by the Commonwealth to address any noncompliance with the terms of this Consent Decree by Boston Sand & Gravel.

14

29.     The titles in this Consent Decree have no independent legal significance and are used merely for the convenience of the Parties.

30.     In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State or Federal holiday, the period shall run until the close of business of the next business day.

31.     Signatures of the Parties transmitted by scanning and email are binding.

## XI. NOTICES

32.     Unless otherwise specified in this Consent Decree, notices and submissions required by this Decree shall be made in writing by first class mail or overnight carrier and by email to the following addresses:

For the Attorney General's Office and the Commonwealth:

Nora J. Chorover
Special Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Nora.chorover@mass.gov

For Boston Sand & Gravel:

Boston Sand & Gravel Company
100 North Washington Street
Boston, MA 02114
Attention:  Dean M. Boylan, Jr., President
dboylan@bostonsand.com

For Correspondence to Boston Sand & Gravel, a Copy to:

Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
Attention:  Joel Lewin and William J. Squires, III
jlewin@hinckleyallen.com
wsquires@hinckleyallen.com

15

or to such other place or to the attention of such other individual as a Party may from time to time designate by written notice to the other Party to this Consent Decree.

33.    If the Court declines to enter this Consent Decree on any ground except one related to form, this Consent Decree is voidable at the option of either Party within fourteen (14) days of the Court's decision. If, on the other hand, the Court determines that substantive modifications to this Consent Decree are necessary prior to the Court's entry of it, the Parties shall enter into good faith negotiations to discuss the modifications, and this Consent Decree shall be void unless the Commonwealth and Boston Sand & Gravel agree otherwise in writing within fourteen (14) days of the Court's decision.

## XII. INTEGRATION

34.    Except as expressly set forth in this Consent Decree, this Consent Decree sets forth all of the obligations of the Parties and represents the complete and exclusive statement of the Parties with respect to the terms of the settlement agreement embodied by this Consent Decree; any other representations, communications, or agreements by or between the Parties shall have no force and effect.

## XIII. MODIFICATION

35.    The terms of this Consent Decree may be modified only by a subsequent written agreement signed by the Parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only by written approval of the Parties and the approval of the Court. The Commonwealth's decision to extend a deadline in this Consent Decree or to exercise enforcement discretion with respect to any alleged violations of any of the terms of this Consent Decree shall not constitute a material change for purposes of this Paragraph.

16

## XIV. AUTHORITY OF SIGNATORY

36.     The person signing this Consent Decree on behalf of Boston Sand & Gravel acknowledges: (a) that he or she has personally read and understands each of the numbered Paragraphs of this Consent Decree, including any Appendices attached to it; (b) that, to the extent necessary, Boston Sand & Gravel's managers, directors, officers, and shareholders have consented to Boston Sand & Gravel entering into this Consent Decree and to its entry as a Final Judgment; and (c) that he or she is authorized to sign and bind Boston Sand & Gravel to the terms of this Consent Decree.

## XV. RETENTION OF JURISDICTION

37.     The Court shall retain jurisdiction over this case for purposes of resolving disputes that arise under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVI. FINAL JUDGMENT

38.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a Final Judgment of the Court.

Dated: _____

_____
Office of the Attorney General
By:
Dated: _9/11/19_

_Dean M. Boylan_
Boston Sand & Gravel Company
By: Dean M. Boylan

IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.
By the Court:

_____
United States District Court
Dated: _____

17

## XIV. AUTHORITY OF SIGNATORY

36.     The person signing this Consent Decree on behalf of Boston Sand & Gravel acknowledges: (a) that he or she has personally read and understands each of the numbered Paragraphs of this Consent Decree, including any Appendices attached to it; (b) that, to the extent necessary, Boston Sand & Gravel's managers, directors, officers, and shareholders have consented to Boston Sand & Gravel entering into this Consent Decree and to its entry as a Final Judgment; and (c) that he or she is authorized to sign and bind Boston Sand & Gravel to the terms of this Consent Decree.

## XV. RETENTION OF JURISDICTION

37.     The Court shall retain jurisdiction over this case for purposes of resolving disputes that arise under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVI. FINAL JUDGMENT

38.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a Final Judgment of the Court.

Dated: _9/17/19_

Office of the Attorney General
By: _Nora J Chorover, SAAG_

Dated: _9/11/19_

Boston Sand & Gravel Company
By: _Dean M. Boylan_

IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.
By the Court:

United States District Court
Dated: _November 25, 2019_

17